UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                                               :
DAMING LIU,                                    :
                                               :
                              Plaintiff,        :         22 Civ. 379
                                               :
              -against-                         :    **OPINION AND ORDER**
                                               :
MICHELLE RAJACIC, et al.,                       :
                                               :
                              Defendants. :
-------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Daming Liu brings this action against Defendants Michelle Rajacic and 142 East 33rd Street Realty Corp. ("142 East"). The First Amended Complaint (the "Complaint") asserts claims of assault, battery, intentional infliction of emotional distress, conversion, negligence and negligence per se. Defendant 142 East moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the motion is granted.

## I.   BACKGROUND

The following facts are taken from the Complaint. *See Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021). They are assumed to be true for purposes of this motion. *See Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022).

Plaintiff is a French citizen who resides in New Caledonia. Defendant 142 East is a corporation that owns and manages the apartment building located at 142 East 33rd Street, New York, New York 10016. Defendant Rajacic resides at and operates a rental business in apartment 4F of that building (the "Apartment").

On December 10, 2021, a friend of Plaintiff's helped him book a stay at the Apartment from December 29, 2021, to January 4, 2022.  Plaintiff paid the full rental amount of $2,500 to Rajacic through Airbnb.  On December 20, 2021, Rajacic confirmed Plaintiff's reservation.

On December 28, 2021, Plaintiff received notice that his flight to New York was cancelled.  Plaintiff tried to change his arrival date on Airbnb but, by mistake, cancelled his booking for the Apartment.  On December 29, 2021, Plaintiff contacted Rajacic several times about the booking.  He told Rajacic that the cancellation shown on Airbnb was unintentional.  Rajacic responded, assuring Plaintiff that he could stay in the Apartment as originally booked.  She would then contact Airbnb and left a key to the Apartment for Plaintiff.

Plaintiff arrived at the Apartment the night of December 29, 2021.  Rajacic had left a key to the Apartment for Plaintiff and gave him the passcode of the lockbox.  She had also promised Plaintiff that the Apartment and building were safe and secure.  In a text message, she said, "you will have one set of keys as there is just you and will have your name on the apartment for the days.  There is security who walks around the building, as he ensures all is safe in the building.  I will give him your name so there is no issues as every guest is accounted for to ensure you and everyone in the building are safe.  Cameras are in the lobby as well for your protection and the building is very safe."

On December 30, 2021, Plaintiff returned to the airport to retrieve a missing bag.  Reassured about the security and safety of the building, Plaintiff left all of his belongings in the Apartment.  These included his laptop, a cell phone, a watch, over $20,000 in cash, two outwears, one camera and his carry-on bag with important travel documents, including Plaintiff's vaccine card and credit cards.  While on his way, Plaintiff was contacted by Rajacic, asking him to rebook the Apartment and pay another $2,500.  Plaintiff then texted and called

Rajacic and Airbnb's customer service several times.  At that time, he did not have a credit card or laptop with him to rebook the Apartment.  Plaintiff planned to do so when he returned to the Apartment.  At 1:50 P.M., Rajacic sent Plaintiff a text stating: "[I]t's ok, just rebook."  Rajacic asked Plaintiff to rebook the Apartment by 5:00 P.M.

Between 2:00 P.M. and 4:00 P.M, while Plaintiff was away, Rajacic entered the Apartment, opened Plaintiff's bag and found a significant amount of cash inside.  She then decided to attack Plaintiff and steal his property.

When Plaintiff returned to the Apartment at 4:00 P.M., Rajacic pepper sprayed Plaintiff without any provocation.  She pepper sprayed Plaintiff's face and eyes, leaving him with a bloodied nose and burning eyes.  Police arrived within ten minutes.  Rajacic lied to the police, stating that Plaintiff had attacked her and stolen the key to the Apartment.  But Plaintiff had recorded the encounter, and the police arrested Rajacic.  Plaintiff was sent to the hospital by ambulance.

Defendant 142 East had required Rajacic to register the name of all her Airbnb guests with its onsite staff.  It had installed surveillance cameras and had employees on site to ensure the security and safety of its tenants and guests in the building.  At the time of the incident, 142 East had exclusive control over who had the right to enter into the building.

Plaintiff's property has not been returned to him.  Without his credit cards and cash, he has had to borrow money from friends to pay for his stay in the U.S.  Due to the loss of his vaccine card, Plaintiff could not travel back to France or to New Caledonia, where he operated a restaurant business.  As a result, his business sustained substantial losses, including rents, wages, supplies and loss of profits, which in total exceed $30,000 monthly.  The restaurant was forced to close, and Plaintiff defaulted on his three-year lease extension.  The landlord seized all

equipment and furnishings that Plaintiff owned at the restaurant, which account for losses exceeding $380,000.

Plaintiff continues to have acute eye pain, swelling and headaches and will have to continue his treatments for a period of time.  He was traumatized by the event and experiences severe anxiety and fear about meeting people he does not know.

## II.    STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks omitted).  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020).  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ] [plaintiff's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Estate of Umar*, 2 F.4th 70, 80 (2d Cir. 2021).  To survive dismissal, "plaintiffs must provide the grounds upon which [their] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (alteration in original) (internal quotation marks omitted).

New York law governs this dispute because the parties' submissions assume that it does. *See In re Snyder*, 939 F.3d 92, 100 n.2 (2d Cir. 2019) ("[I]mplied consent is . . . sufficient to establish the applicable choice of law . . . ." (internal quotation marks omitted)).

## III.   DISCUSSION

The Complaint asserts claims of assault, battery, intentional infliction of emotional distress, conversion, negligence and negligence per se against all Defendants.  Defendant 142 East argues that all claims against it should be dismissed for failure to state a claim. For the reasons below, Defendant 142 East's motion to dismiss is granted.

### A.  Intentional Torts

The Complaint fails to state a claim against Defendant 142 East for the intentional torts of assault, battery, intentional infliction of emotional distress and conversion. "Intentional torts require proof of intent, not mere negligence."  *Wood v. Strong Mem'l Hosp. of Univ. of Rochester*, 692 N.Y.S.2d 277, 278 (4th Dep't 1999); *accord Rafter v. Bank of Am.*, No. 4 Civ. 3341, 2009 WL 691929, at *10 (S.D.N.Y. Mar. 12, 2009).  The allegations in the Complaint, construed in the light most favorable to Plaintiff as the non-moving party, fail to allege facts showing tortious intent on the part of 142 East.  For example, it is Rajacic who is alleged to have "attacked [Plaintiff] and seriously injured him" and intended "to steal [Plaintiff's] properties, especially over $20,000 cash."  The allegations against 142 East -- that it "had the exclusive control over who had the right to enter the building" and therefore the "duty to control and stop the operation of Defendant [Rajacic's] illegal rental business" -- are germane only, if at all, to Plaintiff's negligence claims, which are addressed below.

5

Plaintiff argues that 142 East is vicariously liable for the intentional torts of Rajacic under a principal-agent theory. *See R*estatement (Third) of Agency § 2.02, cmt. h (2006) ("If a principal authorizes the agent's commission of a crime or an intentional tort, the principal will be subject to liability for the agent's wrongdoing."); *accord In re Terrorist Attacks on Sept. 11, 2001*, 298 F. Supp. 3d 631, 644 (S.D.N.Y. 2018) (construing New York law). Even assuming that the Complaint sufficiently states a claim against Rajacic, which would be necessary to impute the tortious conduct to 142 East, the argument is unpersuasive. Under New York law, "an agency relationship 'results from a manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other to act.'" *N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 122 (2d Cir. 2001) (construing New York law); *accord Steinbeck v. Steinbeck Heritage Found.*, 400 F. App'x 572, 575 (2d Cir. 2010). A principal's ability to exercise control over its agent is an essential element of agency. *See R*estatement (Third) of Agency § 1.01, cmt. f (2006). Here, the Complaint does not allege facts sufficient to show an agency relationship between 142 East and Rajacic. The Complaint alleges only that 142 East had "the exclusive control over who had the right to enter into the building" and required Rajacic to "register the name of all her Airbnb guests with its onsite staff." Rajacic did not have to, for example, get approval from 142 East before confirming a reservation, set prices at a particular level or confer any benefit from the business to 142 East. Without more, the Complaint fails to suggest that Rajacic acted on 142 East's behalf and subject to its control. Conclusory statements that Rajacic acted as 142 East's "agent/employee or tenant" are unavailing.

Even if an agency relationship existed, Rajacic's tortious conduct would not be imputed to 142 East.  The Complaint alleges that 142 East "knowingly permitted and authorized [Rajacic] to operate the illegal short-term rental business," and Plaintiff argues that "under the theory of agency/control in fact, [142 East] is liable to plaintiff for his damages."  However, the scope of the alleged agency relationship -- that is, the "illegal short-term rental business" -- would have limited Rajacic's authorization to functions related to operating the Airbnb.  Rajacic was not authorized by 142 East to attack Plaintiff and steal his property.  Her conduct therefore falls outside of the alleged principal-agent relationship.  Her conduct was motivated by personal motives unrelated to furthering the principal's business and cannot be imputed to 142 East.  *See In re Terrorist Attacks on Sept. 11, 2001*, 298 F. Supp. 3d at 644 ("Under New York law, an agent acts outside the scope of its agency if it is motivated solely by personal motives unrelated to the furtherance of the principal's business.") (construing New York law).

As to his conversion claim, Plaintiff argues that the innkeeper doctrine imposes liability on Defendants for Plaintiff's property loss on the premises, regardless of whether the torts were intentional or negligent.  "At common law, an innkeeper was an insurer of goods delivered into his or her custody by a guest, and so was absolutely liable for the loss or destruction of such goods unless caused by the negligence or fraud of the guest, or by the act of God or the public enemy."  *Goncalves v. Regent Int'l Hotels, Ltd.*, 447 N.E.2d 693, 697 (N.Y. 1983) (internal quotation marks omitted).

The innkeeper argument is unavailing, first, because the Complaint alleges conversion and does not allege a cause of action for strict liability of an innkeeper.  Second, even if the Complaint were construed to assert such a claim, it fails because the

alleged facts do not support the inference that Defendant 142 East was acting as an "innkeeper" or "hotelkeeper" with respect to Plaintiff and his property. *See id.* (applying doctrine of innkeeper liability in suit against defendants who "owned *and operated*" the luxury hotel (emphasis added)). While the Complaint alleges facts to show that Rajacic may have been acting as an innkeeper -- i.e., providing Plaintiff temporary accommodations -- the Complaint does not allege similar facts showing that 142 East was in the business of providing temporary accommodations either to Plaintiff or generally. *See Davidson v. Madison Corp.*, 247 N.Y.S. 789, 794 (1st Dep't 1931), *aff'd,* 177 N.E. 393 (N.Y. 1931) (distinguishing between an innkeeper's obligations to a transient guest versus a permanent boarder); Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary (defining "innkeeper" as "a proprietor of an inn," and defining "inn" as "an establishment for the lodging and entertaining of travelers"). That 142 East had knowledge of, or even authorized, Rajacic's short-term rental business does not suggest it was "in the business" of "operating a hotel." *Goncalves*, 447 N.E.2d at 705 (Jasen, J., dissenting). 142 East had no relationship with Rajacic's guests -- it did not provide lodging, did not accept their property for safekeeping, had no contracts or agreements with them, had no interactions, made no assurances, and, as noted above, received no payment or benefit from them.

For all of the reasons above, the Complaint's assault, battery, intentional infliction of emotional distress and conversion claims against 142 East are dismissed.

### B.  Negligence

The Complaint also fails to state a claim against Defendant 142 East for negligence and negligence per se. "Under New York law, in order to recover on a claim

for negligence, a plaintiff must show (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 428 (2d Cir. 2013) (construing New York Law) (internal quotation marks omitted).

"Under New York law, landlords have a duty to take reasonable precautionary measures to protect members of the public from the reasonably foreseeable criminal acts of third persons on the premises." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 77 (2d Cir. 2021) (construing New York law) (cleaned up); *see also Luisa R. v. City of New York*, 686 N.Y.S.2d 49 (1st Dep't 1999) (applying duty only where harm was allegedly caused by conditions that posed a risk to the general public, not just specific tenants, and where both the foreseeability and the landlord's practical ability to respond were evident). "But New York tort law has long been clear that a landlord has no general duty to protect tenants even from the criminal acts of yet another tenant, since it cannot be said that a landlord has the ability or a reasonable opportunity to control the offending tenant and the power to evict cannot be said to furnish such control." *Francis*, 992 F.3d at 77 (construing New York law) (cleaned up); *see also Blatt v. N.Y.C. Hous. Auth.*, 506 N.Y.S.2d 877, 879 (1st Dep't 1986) (finding that landlord had no duty of care to plaintiff, even after assuring him of protection from co-tenant). The duty to provide minimal security precautions to protect tenants or visitors "arises by virtue of the party's ownership and control over property, for the obvious reason that the person in possession of property ordinarily is in the best position to discover and *control* its dangers." *Blatt*, 506 N.Y.S.2d at 879. However, "landlords cannot be presumed to have substantial

control over tenants without allegations of unusual circumstances." *Francis*, 992 F.3d at 77 n.38 (construing New York law).

Here, Defendant 142 East owed no general duty to protect Plaintiff from Rajacic, as Rajacic was a resident and tenant in the Apartment. 142 East did not have the ability or reasonable opportunity to control her, and the Complaint does not allege any "unusual circumstances" that would suggest otherwise. The Complaint alleges that 142 East's "assumption of duty in undertaking the security of the building placed the plaintiff in a more vulnerable position by having him to believe that leaving significant amount of cash in the Apartment was safe," which led to it being stolen. The argument is unpersuasive. It was Rajacic, not 142 East, who assured Plaintiff of the security in the building, of the cameras in the lobby and that every guest of hers is accounted for. Rajacic's representations to Plaintiff of the "heightened security" do not create, as the Complaint alleges, a duty of care owed by 142 East to Plaintiff from tenants like Rajacic.

In addition, or in the alternative, Plaintiff alleges that 142 East committed negligence per se. "Under the rule of negligence per se, if (1) a statute is designed to protect a class of persons, (2) in which the plaintiff is included, (3) from the type of harm which in fact occurred as a result of its violation, the issues of the defendant's duty of care to the plaintiff and the defendant's breach of that duty are conclusively established upon proof that the statute was violated." *German by German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1396 (S.D.N.Y. 1995) (numbering added) (construing New York law); *accord Jordan v. Tucker, Albin & Assocs.*, No. 13 Civ. 6863, 2017 WL 2223918, at *12 (E.D.N.Y. May 19, 2017).

10

The Complaint cites multiple provisions of New York state law and a city ordinance that, in substance, prohibit the short-term rental of certain types of apartments and other dwelling units.  *See* N.Y. Multiple Dwelling Law § 4(8); N.Y.C. Admin. Code §§ 28-210.3, 28-118.3.2, 27-2004, 27-265; N.Y.C. Bldg. Code § 310.1.2, 310.2.  The laws were designed to protect residents from (i) health and safety risks that arise from overcrowding, such as the inadequate provision of light and air, insufficient protection against the defective provision for escape from fire and improper sanitation, (ii) reduced availability of permanent housing, (iii) increased rents and (iv) negative changes to residential neighborhoods.

Plaintiff's claim of negligence per se fails for multiple reasons.  First, the Complaint fails to allege that the Apartment falls within the category of dwelling units governed by the cited state and city laws.  Second, the alleged harm suffered by Plaintiff -- theft, assault, battery and emotional distress, caused by the tenant of the property -- is not the kind of harm that the laws seek to prevent.  These housing laws promote permanent residence and minimize overcrowding; they were not designed to protect short term renters from intentional torts.  Plaintiff articulates no argument to the contrary.  Accordingly, Plaintiff's negligence claims against 142 East are dismissed.

## IV.    CONCLUSION

For the reasons stated above, Defendant 142 East's motion to dismiss is **GRANTED**.  By March 2, 2023, should Plaintiff wish to seek leave to replead consistent with this opinion, he may file a letter, not to exceed three pages, requesting leave to file an amended complaint and explaining how the proposed Second Amended Complaint cures the deficiencies identified

above.  The letter shall append a proposed second amended complaint marked to show the

changes between the proposed complaint and the current complaint.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 65.

Dated: February 17, 2023
       New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**